IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL PROVENCIO, et al.,  )<br>                              )<br>              Plaintiff,       )<br>                              )<br>       v.                     )<br>                              )<br>PATRICIA VAZQUEZ, et al.,     )<br>                              )<br>              Defendants.     )<br>_____) | 1:07-CV-0069 AWI TAG<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AND STRIKE**<br><br>(Documents #66 & #67) |

**BACKGROUND**

On January 12, 2007, Daniel Provencio, Jr., Nancy Mendoza, and Johnny G. Provencio ("Plaintiffs") filed this federal civil rights action pursuant to 42 U.S.C. § 1983, seeking damages for the March 2005 death of their relative, Daniel Provencio ("Provencio"), who was incarcerated at Wasco State Prison ("Wasco").

Defendants, all of whom are or were affiliated with Wasco, moved for a stay and for abstention based on Plaintiffs' pending state court complaints, which were filed in the Kern County Superior Court in 2006 and arose from the same events as this action. On July 13, 2007, this court stayed this federal action.

On December 21, 2007, Plaintiffs filed a motion to lift the stay and a motion to amend the

1

complaint, along with a lodged amended complaint.  Magistrate Judge Goldner took the motions under submission.

On February 14, 2008, Plaintiffs dismissed the related state action.

On June 11, 2008, Magistrate Judge Goldner vacated the stay and granted Plaintiffs' motion to file an amended complaint.

On June 17, 2008, Plaintiffs filed the amended complaint.

On July 3, 2008, Defendants[1] filed a motion to dismiss the complaint.  Defendants contend that the Second Claim, alleging Section 1983 liability of supervisors, is barred as a matter of law.    Defendants contend that the Seventh, Eighth, Ninth, and Tenth Claims are barred by the applicable statute of limitations.  Defendants contend that Defendant Songer should be dismissed because the complaint contains no allegations as to Defendant Songer. Defendants contend that the allegations in the ninth claim, alleging Defendant Warden Vasquez was negligent when she enacted polices concerning medical care, must be struck because Defendant Warden Vasquez is immune from liability.   Finally, Defendants seek to strike the amended complaint's allegations requesting damages for the decedent's pain and suffering and loss of life.

On July 18, 2008, Plaintiffs filed an opposition.  Plaintiffs contend that the statute of limitations should be equitably tolled.    Plaintiffs contend that the supervisors can be held liable for failing to supervise under Section 1983.   Plaintiffs contend that pain and suffering damages, along with hedonic damages, may be recovered in a Section 1983 claim.  Plaintiff concedes that such damages are not available in Plaintiffs' state law claims.   Finally, Plaintiff agrees Defendant Songer should be dismissed.

On July 25, 2005, Defendants filed a reply.   Defendants contend that Plaintiffs are not entitled to equitable tolling.

---

[1] Defendant Matthew Adams is represented by separate counsel.  He joins in Defendants' motion.

# LEGAL STANDARDS

**A. Rule 12(b)(6) – Failure to State a Claim**

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted". Fed.R.Civ.Pro. 12(b)(6). A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

For a complaint to avoid dismissal pursuant to Rule 12(b)(6), the complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, – U.S. – , 127 S.Ct. 1955, 1974 (2007); Weber v. Department of Veterans Affairs, 512 F.3d 1178, 1181 (9th Cir. 2008). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1964-65. Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 1965 n. 3. Thus, a Rule 12(b)(6) motion to dismiss should be granted when a plaintiff fails to nudge his or her claims "across the line from conceivable to plausible." Id. at 1974.

**B. Rule 12(f) – Motion To Strike**

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983). Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. 984 F.2d at 1527.

**ALLEGED FACTS**

The complaint alleges that at or about 4:00 p.m. on January 16, 2005, in Facility D, Building 4 of WSP, Defendant Matthew Palmer ("Palmer") aimed a Defense Technologies 40mm rifle directly at Daniel Provencio ("Provencio"), pulled the trigger, firing the rifle's 40mm plastic bullet, which struck Provencio in the head.

The complaint alleges that moments later, Defendant Matthew Adams ("Adams") sprayed Provencio with Oleoresin Capsicum Pepper Spray ("pepper spray"). The complaint alleges that Defendants Palmer, Lawless, Adams, Hicks, Short, Parades, Drugich, and Ramos, and Doe 1 knew or should have known that pepper spray caused severe pain and anguish and elevated blood pressure, and it should have been, but was not, alleviated by immediately flushing Provencio's face with water. The complaint alleges that none of the Defendants ever flushed the pepper spray from Provencio's face. The complaint alleges that Doe 1 placed a bag over Provencio's head, exacerbating the burning effect of the pepper spray. The complaint alleges that the unflushed pepper spray remained on Provencio's face for the hour that he spent, handcuffed and shackled, in the "emergency room" at WSP and for another 45 minutes while he was being transported by ambulance to Bakersfield, California.

The complaint alleges that Defendants failed to staff WSP's medical facilities with a

4

full-time licensed medical doctor, and failed to provide adequate equipment or support personnel to attend to anticipated injuries or to stabilize patients prior to transport.  The complaint alleges that Defendants contracted with Defendant Ramos to be on-call for medical emergencies at WSP despite defendants' knowledge that Defendant Ramos resided and maintained his medical offices in Bakersfield - at least a 45 minute automobile trip to Wasco, CA.

The complaint alleges that Defendants knew Provencio was very seriously injured and was at substantial risk of serious harm or death.  The complaint alleges that despite such knowledge, Defendants failed, neglected, and refused to render proper medical care to Provencio. The complaint alleges that Defendants ultimately paged Defendant Ramos who arrived at the WSP "emergency room" approximately one hour later.  The complaint alleges that upon Ramos's arrival, he examined Provencio and immediately recognized that Provencio was very seriously injured and was at substantial risk of death unless his subdural hematoma was treated forthwith.

The complaint alleges that Defendant Ramos (a) lacked the training and skill to treat or stabilize Provencio, and/or (b) lacked the equipment and/or support staff to treat or stabilize Provencio.   The complaint alleges that Defendants phoned for a standard ambulance – not a medivac helicopter - to transport Provencio to a general hospital in Bakersfield, California.

The complaint alleges that on March 4, 2005, Provencio died from brain injury and cardiac arrest.  The complaint alleges that the Kern County Sheriff-Coroner determined "that the death of Daniel David Provencio was a homicide, death at the hands of another by other than accident." Coroner's Case No. C-0492-05.

The complaint alleged that Palmer knew that aiming the Defense Technologies 40mm rifle directly at Provencio and pulling the trigger subjected Provencio to a substantial risk of serious bodily injury or death.

The complaint alleges that Defendants Palmer, Lawless, Adams, Hicks, Short, Parades, Drugich, and Ramos and Doe 1 knew that failing to flush the pepper spray from Provencio's face and covering his head with a hood subjected Provencio to agonizing burning pain, elevated blood

5

pressure, and to a substantial risk of serious bodily injury or death.

The complaint alleges that Defendants Vasquez, Cooper, Crouch, Gibson, Gladden, Riley, Gamez, Gibbons, Guerzon, Herrera, Hinter, Johnson, Martinez, Miranda, Phillips, Turpin, Welch, Williams, and Yoder were responsible for training Palmer in the use of the Defense Technologies 40mm rifle. The complaint alleges these Defendants failed to train Palmer, inter alia, about (a) the trajectory or flight-path of the projectile he fired, (b) about the excessively long trigger pull of the launcher, (c) about the reduced geometric target zone when fired at a downward angle, and (d) about the potential lethality involved in firing the weapon at inmates. The complaint alleges that Palmer was rarely given the opportunity to practice firing the 40mm launcher using live rounds. The complaint alleges that Defendants improperly trained Palmer that firing the weapon at inmates was "less than lethal."

The complaint alleges that on and before January 16, 2005, Defendants Vasquez, and Does 2 through 10, breached their duty to Provencio by failing and neglecting to properly train WSP employees (a) that the use of pepper spray upon an inmate with a severe head injury was prohibited because the ensuing increase in blood pressure was life threatening, (b) that the use of pepper spray caused a severe burning sensation, injury to the mucous membranes, coughing, spitting, and difficulty breathing which, unless alleviated by flushing with water, would continue for up to an hour and forty-five minutes.

The complaint alleges that on and before January 16, 2005, Defendants Vasquez and Does 12 through 30, failed, neglected, and refused to (a) train WSP personnel to use medivac helicopters to transport physicians to WSP and (b) train both WSP personnel and Defendant Ramos to use medivac helicopters to transport severely injured inmates, such as Provencio, to the nearest general hospital – 35 miles away in Bakersfield.

The complaint alleges that as of January 16, 2005, WSP was designed and equipped to house 3,104 inmates; instead, on that date, it housed 6,034 inmates.

//

# DISCUSSION

**A. Second Claim for Relief – Violation of Section 1983 by Supervisors**

Title 42 U.S.C. § 1983 allows suits against state actors for actions taken under state law that violate the Constitution. Section 1983 reads in part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he [or she] does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Defendants contend that the Second Claim for relief is barred as a matter of law because it only alleges negligence and negligence is insufficient to establish a violation of the Constitution.

The Second Claim for relief is brought against Defendants Vasquez, Cooper, Crouch, Gibson, Gladden, Goetchius-Riley, Gamez, Gibbons, Guerzon, Herrera, Hinter, Johnson, Martinez, Miranda, Phillips, Turpin, Welch, Williams, Yoder, and Does 2 through 10 ("Defendant Supervisors"). The complaint alleges that Defendant Supervisors were responsible for training Palmer in the use of the Defense Technologies 40mm rifle, and they failed to train Palmer about the Defense Technologies 40mm rifle's use and the use of less lethal force. The complaint alleges that Defendant Vasquez and the Does Defendants breached their duty to Provencio by failing to properly train WSP employees about the potential results of using pepper spray. The complaint alleges that Defendant Supervisors failed to train WSP personnel in the use medivac helicopters to transport physicians and severely injured inmates. The complaint alleges that as a direct result of the foregoing failures to staff, equip, and train, test, and certify,

1 Provencio was deprived of his federally protected constitutional rights.

2 Defendants contend that the Second Claim is barred under Section 1983 because it contains only allegations of negligence. In <u>Daniels v. Williams</u>, 474 U.S. 327, 330-32 (1986), and <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986), the Supreme Court held that mere negligence or lack of due care by state officials does not trigger the protections of the Constitution and therefore does not state a claim under Section 1983. In doing so, the Supreme Court overruled prior case law which had held that a negligent loss of property by state officials could be a "deprivation" under the due process clause. <u>Daniels</u>, 474 U.S. at 330-31. Based on the language used in the Second Claim for relief, the court must agree with Defendant Supervisors that Plaintiffs appear to be alleging a classic claim for negligence. The complaint's references to phrases such as "duty", "breach", and "negligence" imply only negligence is at issue in the Second Claim against Defendant Supervisors. Such a negligence claim is not actionable under Section 1983.

The court does note that supervisors can be liable under Section 1983. To show a supervisor's liability, the plaintiff must show (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. <u>Jeffers v. Gomez</u>, 267 F.3d 895, 915 (9th Cir. 2001). Supervisors can be held liable if they play an affirmative part in the alleged deprivation of constitutional rights by setting in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict the constitutional injury. <u>Graves v. City of Coeur D'Alene</u>, 339 F.3d 828, 848 (9th Cir. 2003) (*citations omitted*) (quoting <u>Rise v. Oregon</u>, 59 F.3d 1556, 1563 (9th Cir.1995)); <u>Larez v. City of LA</u>, 946 F.2d 630, 646 (9th Cir.1991)). Here, the complaint does not allege that any of the Defendant Supervisors set in motion a series of acts or events that the supervisor knew or reasonably should have known would cause others to inflict constitutional injury. Thus, the Second Claim does not allege a Section 1983 cause of action for excessive force based on supervisory liability.

When dismissing a complaint for failure to state a claim, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996). Because it may be possible for Plaintiffs to cure the deficiencies in the Second Claim by alleging additional facts, the court will dismiss this claim with leave to amend.

**B. Statute of Limitations - Seventh, Eighth, Ninth, and Tenth Claims**

The Seventh, Eighth, and Ninth Claims are brought by the Estate for Provencio's damages. The Tenth Claim is a state law claim for wrongful death brought by Plaintiff Daniel Provencio, Jr. The parties agree that pursuant to California Government Code § 945.6(a)(1), Plaintiffs had until March 30, 2006 to file these claims. The parties agree that on March 23, 2006, Plaintiffs filed a complaint in state court containing the Seventh, Eighth, Ninth, and Tenth Claims ("State Court Case"). On January 12, 2007, Plaintiffs filed this action in this federal court. The Seventh, Eighth, Ninth, and Tenth Claims were not included in the original federal complaint. This action was then stayed pending the State Court Case. On December 21, 2007, Plaintiffs filed a motion to lift the stay and a motion to file an amended complaint that contained the Seventh, Eighth, Ninth, and Tenth Claims. On February 11, 2008, Plaintiffs dismissed the State Court Case. On June 17, 2008, the Magistrate Judge granted the motion to amend and the amended complaint, containing the Seventh, Eighth, Ninth, and Tenth Claims was filed.

For a state law claim, the forum state's law determines the statute of limitations. See Flowers v. Carville, 310 F.3d 1118, 1123 (9th Cir. 2002). In addition, the forum state's law determines when the statute of limitations is tolled. Lee v. American Nat. Ins. Co. 260 F.3d 997, 1006 (9th Cir. 2001).

Defendants contend that the Seventh, Eighth, Ninth, and Tenth Claims are bared by the statute of limitations because they were not filed in this action until June 17, 2008, over two

9

years after the statute of limitations had run.  Plaintiffs contend that the Seventh, Eighth, Ninth, and Tenth Claims were timely filed because they were filed in state court within the statute of limitations.  Plaintiffs also contend that they are entitled to equitable tolling on the limitation period for these Claims.

### 1. *Tolling During Pendency of State Case*

"In the absence of a statute, a party cannot deduct from the period of the statute of limitations applicable to his case the time consumed by the pendency of an action in which he sought to have the matter adjudicated, but which was dismissed without prejudice to him." Wood v. Elling Corp. 20 Cal.3d 353, 359 (1977) (quoting 51 Am.Jur.2d, Limitation of Actions, § 311, p. 813.)  When a case is dismissed without prejudice "the applicability of the pertinent statute of limitations is restored as if no action had been brought." Wood, 20 Cal.3d at 359; Thomas v. Gilliland, 95 Cal.App.4th 427, 432-33 (2002).  Otherwise, "[i]f a timely action dismissed without prejudice were, without more, to have the effect of tolling the statute of limitations during the pendency of that action, an indefinite extension of the statutory period – through successive filings and dismissals – might well result." Wood, at 359-60.

The court finds that this reasoning applies to the running of the statute of limitations for the Seventh, Eighth, Ninth, and Tenth Claims.  These Claims were filed in the State Court Case within the statute of limitations.  However, Plaintiffs voluntarily dismissed the State Court Case in February 2008.  Having voluntarily dismissed these Claims, Plaintiffs cannot obtain tolling of the statute of limitations for the time these Claims were pending in the State Court Case.  Thus, the fact the Seventh, Eighth, Ninth, and Tenth Claims were filed in another action within the statute of limitations does not make these claims timely filed for the purposes of this federal action.

10

### *2. Equitable Tolling*

Plaintiffs contend that they are entitled to equitable tolling of the statute of limitations for the Seventh, Eighth, Ninth, and Tenth Claims.   Defendants contend equitable tolling is not available.

"Equitable tolling under California law 'operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004) (quoting Lantzy v. Centex Homes, 31 Cal.4th 363 (2003)).  California "has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." Lantzy, 31 Cal.4th at 370.   The purpose of California's equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137 (9th Cir. 2001).  Equitable tolling under California law is appropriate if there is: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002); Daviton, 241 F.3d at 1137-38; Addison v. State of California, 21 Cal.3d 313, 319 (1978); Collier v. City of Pasadena, 142 Cal.App.3d 917, 924 (1983).

The leading California case on equitable tolling is Addison v. State of California, 21 Cal.3d 313 (1978).   In Addison, the plaintiffs filed a complaint in federal court for federal civil rights violations by public entities, along with pendent state tort causes of action.   Realizing the defendant's motion to dismiss the federal civil rights case would be granted because a civil rights action was not available against public entities, the plaintiffs filed a complaint in state court; This state complaint was filed several months after the statute of limitations had expired. Addison, 21 Cal.3d at 317.   The California Supreme Court held that the statute of limitations

11

had been equitably tolled during the federal suit based on the "general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." Id. at 317-18 (citations omitted).

### a. Notice

The timely notice requirement means that the first claim must have been filed within the statutory period. This filing must "alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." Daviton, 241 F.3d at 1138; Collier, 142 Cal.App.3d at 924. Typically, both claims name the same defendant. Daviton, 241 F.3d at 1138; Collier, 142 Cal.App.3d at 924. "As an example, a workers' compensation claim equitably tolls a personal injury action against that same employer for injuries sustained in the same incident. But under ordinary circumstances that workers' compensation claim would not equitably toll a personal injury action against a third party who might also be liable for the injury." Collier, 142 Cal.App.3d 917, 924-25.

Here, the state court action was filed within the statute of limitations. However, Plaintiffs' state action included only ten of the thirty-seven Defendants named in this federal action. Plaintiffs have not shown how the State Court Case would have put all of the Defendants in this federal civil rights action on notice as to Plaintiffs' state tort claims against them. Once the statute of limitations had passed on the state tort claims, there is no indication that the Defendants in this federal civil rights action would have known they were now going to be sued in tort. Thus, the court cannot find that the Defendants to this federal civil rights action were alerted that they needed to begin investigating the facts that formed the basis of the State Court Case in which they were not named as Defendants.

### b. Prejudice to Defendants

The second requirement concerns prejudice to the defendant from stale claims and deteriorated evidence. This "translates to a requirement that the facts of the two claims be

12

identical or at least so similar that the defendant's investigation of the first claim will put him [or her] in a position to fairly defend the second." Collier, 142 Cal.App.3d at 925.

Plaintiffs have pointed to nothing in the record suggesting that the additional Defendants in this federal civil rights action even knew about the State Court Action filed against the other Defendants. Regardless, there is no indication that the Defendants in this federal civil rights action knew that state tort claims would be filed against them until after the limitations period had expired, when the amended complaint was first lodged. Thus, the court finds Defendants will be prejudiced if the court equitably tolls the statute of limitations.

### c. Plaintiffs Did Not Act Reasonably and in Good Faith

The third element requires that plaintiffs show they acted reasonably and in good faith in pursuing the second case. "As with other general equitable principles, application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute." Addison, 21 Cal.3d at 321.

The California courts have found equitable tolling if there is "a special need for equitable tolling," in which "the brevity of the literal limitations period would otherwise have caused forfeiture of a cause of action, or other undue hardship, despite the plaintiff's diligent efforts to pursue his claim in a correct and orderly way." Lantzy, 31 Cal.4th at 379. Several cases illustrate examples of undue hardship to a plaintiff despite diligent efforts.

> In Lambert, supra, 53 Cal.3d 1072, 282 Cal.Rptr. 445, 811 P.2d 737, absent equitable tolling, literal application of the two-year statute of limitations for actions against a title insurer would have forced the insured "to defend the underlying [title] action, at [his] own expense, and simultaneously to prosecute-again at [his] own expense-a separate action against the title company for failure to defend." ( Id. at p. 1078, 282 Cal.Rptr. 445, 811 P.2d 737.)
> . . . .
> . . . . in Elkins, supra, 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81, the plaintiff, acting in good faith, first pursued a timely worker's compensation remedy against the defendants, thereby foreclosing resort to tort litigation. After the one-year statute of limitations for personal injury actions had expired, the worker's compensation referee found that the plaintiff was not the defendant's "employee" within the meaning of the worker's compensation statutes, and was thus not entitled to benefits. The plaintiff then promptly filed his court action. We

13

> applied the well-established California principle that "the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.' [Citations.]" ( Id. at p. 414, 115 Cal.Rptr. 641, 525 P.2d 81.)

Lantzy, 31 Cal.4th at 379. Here, application of the statute of limitations would not have caused forfeiture of any of Plaintiffs' causes of action, or other undue hardship, if Plaintiffs had simply pursued all of their claims in one action.

The court finds that this is not a situation in which a plaintiff possessed several legal remedies and pursued the one designed to lessen the extent of his injuries and damages. See Addison, 21 Cal.3d at 317. Here, Plaintiffs had one basic remedy - a civil lawsuit against Defendants. Despite the fact that Plaintiffs could have filed this civil lawsuit, containing both federal civil rights claims and state claims, in either this federal court or state court, Plaintiff chose to split their lawsuit and pursue two parallel actions in two courts. Even after the court pointed out in this action that Plaintiffs could proceed in one forum, Plaintiffs continued with their parallel claims and parallel actions until the eve of the State Court Case trial. Refusing to apply equitable tolling here will not encourage duplicative litigation, as is often the case when equitable tolling has been allowed. To the contrary, refusing to apply equitable tolling in this case will encourage plaintiffs to pursue their federal and state claims in the same forum.

Equitable tolling should be sparingly applied in special situations. Addison, 21 Cal.3d at 316. The court finds that this is not one of the unique situations in which equitable tolling is appropriate. The statue of limitations ran on some of Plaintiff's claims while Plaintiff was pursuing separate actions that could have been brought as one action. This is simply not the case where there was an unjust technical, forfeiture of a plaintiff's claim and where the defendant would suffer no prejudice.

### *d. Recent Ninth Circuit Law*

The court further finds that equitable tolling in this situation has been foreclosed by the recent Ninth Circuit case of Johnson v. Riverside Healthcare System, LP, – F.3d –, 2008 WL

2875305, 8 (9th Cir. 2008).   In Johnson, the defendant's Medical Staff's Residency Selection Committee refused to consider the plaintiff as a residency candidate and denied the plaintiff medical staff membership.  Id. at *2.  The plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH") alleging that he had been harassed, denied employment, and denied privileges on account of his race and sexual orientation.  Id. The plaintiff received a right-to-sue letter from the DFEH on September 30, 2002 and timely filed an action in the California state court on September 5, 2003.  Id.   The plaintiff voluntarily dismissed the state action on October 16, 2003, and then, on December 2, 2003, the plaintiff filed a complaint in federal court.  Id. at *2 & *8.  The federal court action was filed 64 days after the limitations period expired.  Id. at *8.   The federal district court dismissed the action, and the plaintiff appealed.

On appeal, the plaintiff contended that his timely state court filing satisfied the statute of limitations under theories of equitable estoppel and equitable tolling.   The Ninth Circuit disagreed.  Johnson, 2008 WL 2875305, *8.  The Ninth Circuit found that "[u]nder California law, equitable tolling will be warranted where the defendants have induced the plaintiff to delay filing until after the statute of limitations has run."  Id.   The Ninth Circuit found nothing in the record to suggest that the defendant's conduct somehow caused the plaintiff to voluntarily dismiss the state court action and then wait 47 days before filing the action in federal court.  Id. Citing Woods, the Ninth Circuit found that "California courts have concluded that absent express statutory language, a plaintiff's voluntary dismissal will not entitle him to toll the statute of limitations."  Id.  The Ninth Circuit concluded that the plaintiff's "voluntary dismissal of his state court action is not an event to which equitable tolling applies."  Id.

Here, there is no assertion, argument, or evidence that Defendants encouraged Plaintiffs to proceed with their various claims and cases in the method they did.   Rather, Plaintiffs' current situation is one of their own making because they choose to litigate several cases that could have been tried in one court.   Even if Plaintiffs were somehow to persuade the court that the

15

Defendants named in this federal civil rights action knew "all along" that they could be named as defendants to state tort claims, equitable tolling is not mandatory.  Although the California Supreme Court has articulated the three elements that must be satisfied under the doctrine, neither the Ninth Circuit nor the California Supreme Court have held that an otherwise time-barred claim *must* survive simply because it meets these three criteria.

Thus, equitable tolling is not available on Plaintiffs' Seventh, Eighth, Ninth, and Tenth Claims.  These Claims are subject to dismissal for being filed outside the statute of limitations.

**C.  Defendant Michael Songer**

Defendant seeks to dismiss Defendant Michael Songer because the complaint does not contain any allegations against Defendant Songer.  Plaintiffs do not oppose the dismissal of Defendant Songer.  Accordingly, the court will dismiss Defendant Songer.

**D.  Immunity of Defendant Vasquez to Ninth Claim**

Defendants request the court strike the allegations against Defendant Vasquez found in the Ninth Claim.  Defendants contend that Defendant Vasquez is immune under California Government Code §§ 820.2 and 845.2.  Plaintiffs do not address this argument in their opposition.  Because the Ninth Claim is being dismissed on statute of limitations grounds, it is unnecessary for the court to address Defendants' immunity arguments.

**E.  Damages for Estate**

The First Claim is brought by the Estate and alleges Defendants violated Provencio's civil rights when they used excessive force on Provencio.  Paragraphs 36 asks for damages for Provencio's "great physical, mental and emotional suffering" prior to death.  Paragraph 38 seeks damages for Provencio's "loss of enjoyment of the rest of his life", often referred to as hedonic damages.  The Seventh Claim alleges Defendants violated California Government Code § 844.6

when their negligence resulted in Provencio's injury and death.  Paragraph 106 asks for damages for Provencio's "great physical, mental and emotional suffering" prior to death.  Defendants contend that such damages are not permissible, and as such, these allegations should be struck from the complaint.

### 1. *Estate's Damages for Negligence*

Defendants contend that the Estate cannot obtain damages for Provencio's physical, mental, and emotional suffering prior to death or hedonic damages for the Seventh Claim.  In their opposition, Plaintiffs concede that such damages are not available for the state law negligence claim.  California Civil Procedure Code § 377.34 states:

> In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement.

Because damages for pain and suffering are not allowed under California law, the damage requests for pain and suffering in the state law negligence claim must be struck.  In addition, hedonic damages are not available under Section 377.34.  See Garcia v. Superior Court, 42 Cal.App.4th 177, 187 (1996).  Thus, the requests for pain and suffering damages and hedonic damages pertaining to the Estate's survivorship claim under state law will be struck.

### 2. *First Claim - Estate's Damages for Civil Rights Violations*

Defendants also contend that Section 377.34 prohibits pain and suffering damages and hedonic damages for the Estate's civil rights claim.  Section 1983 does not address survivor claims or any appropriate remedies.  Pursuant to 42 U.S.C. § 1988, if a civil rights statute is "deficient in the provisions necessary to furnish suitable remedies," the court is to look to state law.  42 U.S.C. § 1988.  This rule is "subject to the important proviso that state law may not be

17

applied when it is 'inconsistent with the Constitution and laws of the United States.'" Robertson v. Wegmann, 436 U.S. 584, 590 (1978).  The Supreme Court has identified the purpose behind the Federal Civil Rights Act is to:  (1) Prevent official illegality, Robertson, 436 U.S. at 592, and (2) "[C]ompensate persons for injuries caused by the deprivation of constitutional rights." Carey v. Piphus, 435 U.S. 247, 254 (1978).  Thus, the issue is whether application of Section 377.34 to bar pain and suffering damages, along with hedonic damages, is inconsistent with the Civil Rights Act.

Early courts addressing this issue refused to apply Section 377.34 to limit damages in civil rights actions.  In Guyton v. Phillips, 532 F.Supp. 1154 (N.D. Cal.1981), the Northern District held that application of California's survivorship statute to preclude all recovery for pain and suffering would be inconsistent with federal civil rights laws.  The Central District reached a similar holding in Garcia v. Whitehead, 961 F.Supp. 230, 232 (C.D. Cal. 1997).  These courts noted that had the decedents survived, they could have recovered, among other things, loss of earnings and pain and suffering. Garcia, 961 F.Supp. at 232; Phillips, 532 F.Supp. at 1166  The courts reasoned that those who kill should not receive a lighter penalty than they would have had their victim lived. Garcia, 961 F.Supp. at 232; Phillips, 532 F.Supp. at 1167.  As such, the courts concluded that the application of Section 377.34 was inconsistent with the Constitution and federal law.

More recently, the Eastern District of California has concluded that Section 377.34 is ***not*** inconsistent with the Constitution and Federal Civil Rights Act when all of the damages provided for by the California survival and wrongful death statutes are considered.  In Venerable v. City of Sacramento, 185 F.Supp.2d 1128 (E.D. Cal. 2002), the court recognized that those courts that refused to apply Section 377.34 did so because they believed a wrongdoer would be in a better position when death, rather than only injury, occurred.  In rejecting this argument, the court noted that "this paradox is frequently present in tort cases and it is inherent to the human condition; there are many occasions when death is cheaper than life, particularly life prolonged or supported

by heroic medical efforts." Id. at 1133.  The court found that without empirical evidence to the contrary, the court would not "adopt the cynical proposition that law enforcement officers generally prefer to run the risk of inflicting death than of merely maiming a victim because death cuts off a claim for pain and suffering by the decedent." Id.  The Eastern District recently reaffirmed this position in Whitfield v. California, 2007 WL 496342, *2 (E.D. Cal. 2007).

In Garcia v. Superior Court, 42 Cal.App.4th 177 (1996), the California Court of Appeal reached the same conclusion as the Eastern District of California.  The California Court of Appeal denied a writ of mandate petition seeking to overturn an order striking a cause of action for hedonic damages in a wrongful death action filed in state court under Section 1983.  The California Court of Appeal found that California's statute excluding damages for the decedent's pain and suffering is not inconsistent with federal law.  Id. at 180.

This court respectfully declines to follow the reasoning of the Northern District and Central District, and this court agrees with the holding reached by other courts in this District and the California Court of Appeal.  The deterrent purpose of Section 1983 is satisfied by the fact that Section 377.34 allows the estate to recover the punitive damages the decedent would have been entitled to recover had he survived.  Garcia v. Superior Court, 42 Cal.App.4th at 186; Urbaniak v. Newton, 226 Cal.App.3d 1128, 1142 (1991).  Unfortunately, once deceased a decedent cannot in any practical way be compensated for his injuries or pain and suffering, or be made whole. Garcia v. Superior Court, 42 Cal.App.4th at 186.  However, the statutory scheme for survivors in California still provides compensatory damages for the remaining injured parties, i.e. the survivors.  California law provides for not only recovery by the representative of the estate but also for a wrongful death action by the decedent's heirs.  Cal. Civ. Proc. Code §§ 377.60, 377.61; Garcia v. Superior Court, 42 Cal.App.4th at 186.  Thus, this court finds that the Estate's claims for pain and suffering damages and hedonic damages are precluded by Section 377.34.  The court will strike these damage requests from the First Claim alleging civil rights violations on behalf of the Estate.

**ORDER**

Accordingly the court ORDERS that:

1. Defendants' motion to dismiss is GRANTED IN PART as follows;
2. The Second Claim is DISMISSED with leave to amend;
3. The Seventh Claim, Eighth Claim, Ninth Claim, and Tenth Claim are DISMISSED without leave to amend and with prejudice;
4. Defendant Michael Songer is DISMISSED from this action;
5. The Estate's damage requests based on Provencio's physical and emotional pain and suffering and the Estate's damage request for hedonic damages are STRUCK;
6. Any amended complaint[2] SHALL BE FILED within twenty days of this order's date of service;
7. If Plaintiffs do not file an amended complaint, this action will proceed on those Claims not dismissed by this order.

IT IS SO ORDERED.

Dated:   **August 15, 2008**          /s/ Anthony W. Ishii
                                       CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs are advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567.