1

2

3

4

5

6

7    **IN THE UNITED STATES DISTRICT COURT FOR THE**

8    **EASTERN DISTRICT OF CALIFORNIA**

9

10   **DANIEL PROVENCIO, JR., personally**          1: 07 - CV - 00069 - AWI - BAK
     **and as a successor in interst to DANIEL**
11   **PROVENCIO, deceased, by his guardian**       ORDER GRANTING IN PART
     **ad litem, Maria Lucero, et al,**             AND DENYING IN PART
12                                          )       DEFENDANT, MICHAEL
                                            )       SONGER'S, MOTION TO
13                       **Plaintiffs**,    )       DISMISS PORTIONS OF THIRD
                                            )       AMENDED COMPLAINT.
14      **v.**                             )
                                            )       Document # 129
15   **PATRICIA L. VAZQUEZ, et al**        )
                                            )
16                                          )
                     **Defendants**.        )
17                                          )
     _____   )
18

19

20                          **BACKGROUND**

21        This case arises from an incident at Wasco State Prison – Reception Center ("WSP")

22   taking place on January 16, 2005.  Daniel Provencio ("Provencio"), an inmate, was shot in the

23   head with a rubber projectile from a 40mm launcher operated by correctional officer Mattew

24   Palmer.  Provencio was later pepper-sprayed and taken to the "emergency room" at WSP.  The

25   conduct of the medical staff, acting in alleged accordance with policies put in place by

26   Defendant, provides the factual grounds for Plaintiffs' claims.  Plaintiffs' filed suit in this court

27   on January 12, 2007.  Plaintiffs' third amended complaint was filed on January 2, 2009.  In the

28   third amended complaint, Plaintiffs' allege violations of Provencio's Eighth Amendment rights

1  and file suit pursuant to the provisions of 42 U.S.C. § 1983.

2      For the current motion before the court, Defendant is Dr. Michael Songer ("Defendant"),

3  who was the Health Care Manager for WSP, sued fictitiously as "Doe" 20, 30, and 31 in the third

4  amended complaint.  Defendant moved to dismiss portions of the third amended complaint on

5  April, 27, 2009 and this motion was taken under submission on June 4, 2009.

6                              **LEGAL STANDARD**

7      In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

8  the court examines whether a complaint "contain[s] sufficient factual matter, accepted as true, 'to

9  state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

10 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court must

11 construe the pleading in the light most favorable to the party opposing the motion, and resolve all

12 doubts in the pleader's favor.  Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740

13 (1976); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Broam v. Bogan, 320 F.3d 1023, 1028

14 (9th Cir. 2003).   A Rule 12(b)(6) dismissal can be based on either the failure to allege a

15 cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.

16 Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter

17 Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). In Iqbal the Supreme Court affirmed the

18 broad application of the "plausible" standard, announced in Twombly, for examining the

19 sufficiency of pleadings under Federal Rule of Civil Procedure 8. Iqbal 129 S.Ct. at 1953 (stating

20 that the Court's decision in Twombly was based on "[the Court's] interpretation and application

21 of Rule 8" and continuing that "[The Court's] decision in Twombly expounded the pleading

22 standing standard for 'all civil actions'"). In applying the Twombly standard in Iqbal the Court

23 outlined a two step process for analyzing a complaint. Id. at 1950-51.  First, a reviewing court

24 identifies all legal conclusions "that are not entitled to the assumption of truth." Iqbal 129 S.Ct.

25 at 1949-51 (quoting Twombly, 550 U.S. at 555,  parenthetically for the proposition that the Court

26 "[is] not bound to accept as true a legal conclusion couched as a factual allegation").  Second, a

27

28                                  2

1  court, "draw[ing] on its judicial experience and common sense", must determine in the specific

2  context of the case whether the facts, if taken as true, establish a plausible claim for relief. Id. at

3  1950.

**FACTS**

5      This case involves numerous defendants and numerous facts relevant to various defense

6  claims.  The general facts as stated in the complaint are that on January 16, 2005, Provencio, an

7  inmate at WSP, was shot in the head with a rubber projectile from a 40mm launcher operated by

8  correctional officer Matthew Palmer.  Provencio was later pepper-sprayed and taken to the

9  "emergency room" at WSP.  Provencio was attended to by a registered nurse, David Hicks, who

10  paged the on-call doctor, Bernard Ferrer Ramos.  Dr. Ramos drove from Bakersfield to WSP,

11  approximately 35 miles away, and upon inspecting Provencio called for an ambulance to

12  transport Provencio to a hospital.  Provencio went into cardio-pulmonary arrest while being

13  transported.  Provencio later suffered death as a result of his wounds.

14      The facts specifically  relevant to this motion are as follows.  Plaintiffs filed suit in this

15  court on January 12, 2007.  The Plaintiffs' case was stayed from July 17, 2007, to June 11, 2008,

16  while Plaintiffs sought remedies in another action in state court.  Plaintiffs' third amended

17  complaint was filed on January 2, 2009.  In the third amended complaint, Plaintiffs allege

18  violations of Provencio's Eighth Amendment rights and file suit pursuant to the provisions of 42

19  U.S.C. § 1983. On March 17, 2009, Plaintiffs filed amendments to their third amended complaint

20  identifying Dr. Michael Songer as "Doe" 20, 30 and 31.

21      The complaint alleges that Doe 20 and 30 failed and refused to train WSP personnel to

22  use medivac helicopters to transport physicians to WSP or to transport injured inmates from

23  WSP.  Plaintiffs' allege Doe 31 "well-knew" inmates regularly suffered injuries requring the

24  attention of a licenced medical doctor and had an obligation to staff the medical facilities at WSP

25  with a full-time doctor and provide "adequate equipment and support personnel properly to

26  attend to anticipated injuries, and to stabilize patients prior to transport to the nearest general

3

1  hospital 35 miles away in Bakersfield, California." Third Amended Complaint at ¶¶ 55-57.

2  Among other allegations, the complaint alleges Defendant failed to properly staff WSP because

3  Defendant had contracted with Defendant Ramos to be on-call for medical emergencies instead

4  of staffing a full-time doctor to always be on duty at WSP.

5  **DISCUSSION**

6  I. Applicability of California Code of Civil Procedure section 583.420 to California's Fictitious

7  Defendant Pleading Procedure in Federal Court

8  As a threshold issue Defendant contends that Plaintiffs' claims are time-barred under the

9  State of California's "Doe" pleading procedures. Specifically Defendant contends that Plaintiffs'

10  action must be dismissed pursuant to California Code of Civil Procedure section 583.420 which

11  grants California State courts the discretion to dismiss a suit for failure to serve a defendant

12  within two years. Defendant, however, mistakes the nature of California Code of Civil

13  Procedure section 583.420 and its applicability in a United States District Court.

14  Plaintiffs' claims are made pursuant to 42 U.S.C. § 1983 which creates a civil action for

15  the deprivation of federally protected rights. Because 42 U.S.C. § 1983, contains no specific

16  statute of limitations, federal courts borrow state statues of limitations for personal injury actions

17  in Section 1983 suits. Wilson v. Garcia, 471 U.S. 261, 276 (1985); Canatella v. Van De Kamp,

18  486 F.3d 1128, 1132 (9th Cir. 2007); Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).

19  "Federal law determines when a civil rights claim accrues." Maldonado, 370 F.3d at 954; Knox

20  v. Davis, 260 F.3d 1009, 1013 (9th Cir.2001). Accrual occurs when the plaintiff has "a complete

21  and present cause of action." Wallace v. Kato, 549 U.S. 384, 388 (2007). The Ninth Circuit

22  has explained that "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to

23  know of the injury which is the basis of the action." Maldonado, 370 F.3d at 955; Knox, 260

24  F.3d at 1013.

25  Defendant is correct that in a 42 U.S.C. 1983 action, when the court borrows the statute

26  of limitations from California State law, California's procedure for relation back in the suing of

27

28  4

1  fictitious defendants controls.  Merritt v. County of Los Angeles, 875 F.2d 765, 768 (9th Cir.

2  1989); Cabrales v. County of Los Angeles, 864 F.2d 1454, 1463 (9th Cir. 1988).  The court's

3  conclusion in Cabrales expressly relied on Lindley v. General Elec. Co., 780 F.2d 797 (9th Cir.

4  1986).  Cabrales at 1463.  In Lindley, the Ninth Circuit adopted a district court's determination

5  that taken together California Civil Procedure Code sections 340, 474, and 581a can functionally

6  create a four year statute of limitations if the plaintiff filed suit within one year of accrual of the

7  cause of the action and the identity of defendants are unknown to plaintiff.[1]  Lindley at 800

8  (paraphrasing and adopting Rumberg v. Weber Aircraft Corp., 424 F.Supp. 294 (C.D.Cal.1976));

9  Cal. Civ. Proc. Code §§ 340, 474, 581a, 583.210.[2]  Some commentators suggest the line of cases

10 following Cabrales and Merritt can be explained as a determination that California's

11 relation-back rule is inextricably intertwined with its statute of limitations.  6A Wright, Miller &

12 Kane,  Fed. Prac. & Proc. Civ.2d § 1503 (2009).  This contention is supported by the legislative

13 comments to section 583.210 when it was enacted in 1984 following the repeal of section 581a.

14 See Legislative Committee Comments–Assembly Cal. Civ. Proc. Code § 583.210 (West 2009)

15 ("section 583.210 applies to a defendant sued by a fictitious name from the time the complaint is

16 filed.").  Although Merrit and Cabrales do not specifically reference section  583.210, it is clear

17 from the context, underlying opinions and subsequent cases that section 583.210 is the statute

18 that in combination with section 474 has been found to allow plaintiffs suing fictitious

19 defendants in federal court under 42 U.S.C. 1983 three years to serve a "Doe" defendant upon

20 ascertaining their identity.  See Rodgers v. Horsely, 123 Fed. Appx. 281, 285 (9th Cir. 2005)

21

22  [1] Since Cabrales and the cases Cabrales relied on, the California legislature has amended
    California Code of Civil Procedure sections 340 and 581a. California Civil Procedure Code

23  section 340 formerly provided for a one year statute of limitations for personal injury claims.
    Section 335.1, amended in 2003, now provides for a two year statute of limitations.

24
    [2] As the court noted in Lindley, section 581a was recodified in relevant part as section

25  583.210.  See Lindley, 780 F.2d at 800 n.5("Arguing that we should not follow Rumberg, Stone
    & Webster cites several California cases that characterize **Cal.Civ.Proc.Code § 581a (now §**

26  **583.210)** as merely procedural") (emphasis added); see also  Legislative Committee
    Comments–Assembly Cal. Civ. Proc. Code § 583.210 (West 2009) ("Section 583.210 is drawn

27  from the first portions of subdivisions (a) and (b) of former Section 581a").

28                                          5

1  (citing the California Supreme Court in <u>Norgart v. Upjohn Co.</u>, 21 Cal.4th 383, 389 (1999), and

2  stating that a 42 USC § 1983 plaintiff "has three years to identify the unknown defendant, amend

3  the complaint, and effect service of the complaint"); <u>Motley v. Parks</u>, 198 F.R.D. 532, 534-35

4  (C.D. Cal. 2000) (finding, in a case arising under 42 U.S.C § 1983, that Federal Rule of Civil

5  Procedure 15(c)(1) applied to California Civil Procedure Code section 583.210 and allowed

6  plaintiffs three years to serve "Doe" defendants).

7    However, in the current case Defendant is asking this court to take a step beyond <u>Merrit</u>

8  and <u>Cabrales</u>.  Defendant contends that this court should apply California Civil Procedure

9  sections 583.410 and 583.420, which grant California State courts the discretion to dismiss

10  claims where plaintiffs have failed to serve a defendant within two years.  California Civil

11  Procedure section 583.410(a) states "the court may in its discretion dismiss an action for delay in

12  prosecution pursuant to this article. . . if to do so appears to the court appropriate under the

13  circumstances of the case."  Section 583.420 provides, in relevant part, "[t]he court may not

14  dismiss an action pursuant to this article for delay in prosecution except" if "[s]ervice is not made

15  within two years after the action is commenced against the defendant."  Cal. Civ. Proc. Code §

16  583.420(a)(1).  Defendant provides California case law suggesting that dismissal is "required"

17  after two years where "no excusable delay" has been shown.[3]

18    This court holds that section 583.420 is not controlling for the following reasons.  First,

19  section 583.420, unlike section 583.210, does not contain any Legislative Comment indicating it

20  is specifically a part of California's "Doe" pleading procedures.  <u>See</u> Legislative Committee

21  Comments–Assembly Cal. Civ. Proc. Code § 583.420 (West 2009).  In fact, article four of

22  section 583 is entitled "Discretionary Dismissal for Delay" and the Legislative Comments

23  indicate that section 583.420 "continues the substance of section 583(a)", not former section

24

25      [3] The Court notes that if California state law were to apply, under section 583.420, the
    computation of time is made "in the manner provided" for in sections 583.240.  Although
26  Plaintiffs do not cite it, section 583.240 explicitly states there shall be excluded the time during
    which the prosecution of the action or proceedings in the action was stayed and the stay affected
27  service.

581a.  Id.  Second, the Federal Rules of Civil Procedure already furnish this court with the

procedure and grounds for discretionary dismissal in the form of Rule 41(b) of the Federal Rules

of Civil Procedure.  Rule 41(b) provides that "If the plaintiff fails to prosecute or to comply with

these rules or a court order, a defendant may move to dismiss the action or any claim against it."

Third, "when it is necessary for [the federal courts] to borrow a statute of limitations for a federal

cause of action, [the federal courts] borrow no more than necessary."  West v. Conrail, 481 U.S.

35, 39 (1987).  Without devolving into a full *Erie-Hanna* analysis, this court concludes that

section 583.420, concerning discretionary dismissal for delay, is not inextricably intertwined nor

a substantive element of California's "Doe" pleading procedure.  See  Hanna v. Plumer, 380 U.S.

460, 471, 85 S.Ct. 1136, 1144 (1965) ("When a situation is covered by one of the Federal Rules,

the question facing the court is a far cry from the typical, relatively unguided Erie choice: the

court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory

Committee, this Court, and Congress erred in their prima facie judgment that the Rule in

question transgresses neither the terms of the Enabling Act nor constitutional restrictions").

　　　Plaintiffs filed this case on January 12, 2007, and effected service on Defendant on March

17, 2009.  Under Cabrales and Merritt, Plaintiffs suing fictitious defendants under California law

have three years to identify and serve defendants.  Plaintiffs' service of Defendant was within

three years of filing this action and is therefore timely.

II.  Plaintiffs' Substantive Causes of Actions Against Defendant

　　　Turning to the substance of Plaintiffs claims, Plaintiffs allege six causes of action against

Dr. Songer, sued fictitiously as "Doe" 20, 30, 31.  Defendant moves the court to dismiss the

second, third, fifth and sixth cause of action.  Defendant does not challenge the sufficiency of

Plaintiffs' claims but rather asserts the actions must be dismissed because Defendant is entitled

to qualified immunity.

　　　Government officials are entitled to qualified immunity from civil liability under 42

U.S.C. § 1983 "'insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" Jensen v. City of
Oxnard,145 F.3d 1078, 1085 (9th Cir. 1998) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818
(1982)).  The Supreme Court has stressed that qualified immunity "provides ample protection to
all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502
U.S. 224, 229 (1991) (per curiam); Malley v. Briggs, 475 U.S. 335, 343 (1986)); Rodis v. City,
County of San Francisco, 558 F.3d 964, 971 (9th Cir. 2009).  The test for qualified immunity is
two-fold, "First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules
Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional
right.  Second, if the plaintiff has satisfied this first step, the court must decide whether the right
at issue was "clearly established" at the time of defendant's alleged misconduct.  Pearson v.
Callahan, 129 S.Ct. 808, 815-16 (2009)(citing Saucier v. Katz, 533 U.S. 194, 201(2001)).  The
Supreme Court in Pearson, however, reversed the mandatory order of the qualified immunity
inquiry allowing courts the discretion to analyze the two prongs in either order.  Pearson at 818.
The defendant bears the burden of establishing qualified immunity. Crawford-El v. Britton, 523
U.S. 574, 586- 87 (1998).

Central to the first prong of the qualified immunity test as laid out in Saucier and
Pearson is the sufficiency of Plaintiffs' causes of action under 42 U.S.C. § 1983 and specifically
whether a Constitutional violation has been properly alleged.  "To establish that a state official is
personally liable in an action under 42 U.S.C. § 1983, a plaintiff must show that 'the official,
acting under color of state law, caused the deprivation of a federal right.'" Spoklie v. Montana,
411 F.3d 1051, 1060 (9th Cir. 2005) (citations omitted).  Plaintiffs do not allege that Defendant
was directly involved in the conduct that allegedly deprived Provencio of his federally protected
rights, but rather allege Defendant enacted policies that led to the events depriving Provencio of
his rights.  "Generally, supervisory officials are not liable for the actions of subordinates on any
theory of vicarious liability under 42 U.S.C. § 1983." Jeffers v. Gomez, 267 F.3d 895, 914 (9th
Cir. 2001) (citing Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989)).  "A supervisor may be

liable under § 1983 only if there exists either ‘(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.’ ” Id. (quoting Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991)) (internal citations omitted); Hansen 885 F.2d at 646.  In Hansen, the Ninth Circuit further concluded that “[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy ‘itself is a repudiation of constitutional rights’ and is ‘the moving force of the constitutional violation.’” Jeffers at 914. (citing Redman, 942 F.2d at 1446) (internal citations omitted).  “The requisite causal connection may be established when an official sets in motion a ‘series of acts by others which the actor knows or reasonably should know would cause others to inflict’ constitutional harms.”  Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007)(citing Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978)).

The causes of action Defendant contests arise under the Eighth Amendment's bar on cruel and unusual punishment as interpreted by the Supreme Court in Estelle v. Gamble, which held that:

> **Deliberate indifference to serious medical needs of prisoners constitutes the “unnecessary and wanton infliction of pain,” proscribed by the Eighth Amendment.**  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
>
> This conclusion does not mean, however, that every claim by a prisoner that he  has  not received adequate medical treatment states a violation of  the Eighth Amendment. . . .[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute “an unnecessary and wanton infliction of pain” or to be “repugnant to the conscience of mankind.” Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (citations omitted) (emphasis added).  In sum, pursuant to the multitude of cases following Estelle, for Plaintiffs to properly assert a claim

against Defendant, Plaintiffs must allege that: (1) Provencio had a serious medical need, (2) which individuals were deliberately indifferent to (3) because of the policies Defendant established, (4) while acting under the color of state law, (5) were so deficient as to be the "moving force" behind the violation of Provencio's Eighth Amendment rights.

The second prong of the qualified immunity analysis inquires "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson 129 S.Ct. 815-816.  Although Plaintiffs do not cite the court to any authority that addresses similar factual circumstances that would "clearly establish" Provencio's alleged Constitutional right, the court notes that lack of precedent does not necessarily entitle Defendant to qualified immunity.  "The injured party need not establish that the Defendant's behavior had been previously declared unconstitutional." Rodis, 545 F.3d at 969.  The inquiry is whether it would be clear to a reasonable officer that his or her conduct was unlawful in the situation he or she confronted. Saucier, 533 U.S. at 202; Rodis, 545 F.3d at 969.  For a right to be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  With these standards in mind the court turns to the specific causes of action against Defendant.

A. Second Cause of Action

Plaintiffs' second cause of action alleges that Defendant failed and refused to train Wasco State Prison personnel to use medivac helicopters to transport physicians to Wasco State Prison and to use medivac helicopters to transport severely injured inmates to the nearest general hospital.  Plaintiffs further allege that this failure and refusal to train set in motion a series of acts or events that Defendant knew or reasonably should have known would cause others to inflict constitutional injury. Plaintiffs assert that as a direct result Provencio suffered injuries and death due to Defendant's reckless and callous indifference to Provencio's Eighth Amendment rights.

In this motion, Defendant has not contested the sufficiency of Plaintiffs' allegations.  Instead Defendant asserts that dismissal is appropriate because Defendant is entitled to qualified

10

immunity.  The court will first analyze "whether the facts that a plaintiff has alleged (see Fed.

Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a

constitutional right."  Pearson, 129 S.Ct. at 815-16.   Plaintiffs do not appear to have alleged the

elements of a 42 U.S.C. § 1983 claim under the Eighth Amendment necessary to make a cause of

action against Defendant.  The complaint clearly alleges that Provencio did receive medical

attention and emergency medical transport in response to Provencio's serious medical need.

Plaintiffs therefore fail to establish the third prong of the standard set forth by this court for

stating a cause of action against Defendant under 42 U.S.C. § 1983 in violation of Eighth

Amendment; Plaintiffs fail to connect how Defendant's alleged policy caused individuals to act

in deliberate indifference to Provencio's serious medical needs.  The complaint does not allege

that Defendant's alleged failure to train WSP personnel to utilize medivac helicopter services

caused Provencio to be struck by a 40mm rubber projectile, nor does it allege that Defendant's

alleged policy prevented Provencio from receiving medical attention or emergency medical

transport.  Plaintiffs fail to connect how Provencio's serious medical needs were affected by

Defendant's alleged failure to train WSP personnel to utilize medivac helicopter services.  It has

long been established that differences in medical opinion, such as whether standard emergency

medical services ambulances or medivac helicopter services are appropriate, do not constitute

violations of the Eighth Amendment. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)

("We held in Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989) (citing Estelle, 429 U.S. at 107,

97 S.Ct. at 292), for example, that a plaintiff's showing of nothing more than 'a difference of

medical opinion'. . . was insufficient, as a matter of law, to establish deliberate indifference").

As the court understands it, the cause of action Plaintiffs are attempting to assert is

fundamentally a claim that because of Defendant's policies, the staff at Wasco State Prison were

not trained for utilizing medivac helicopters and the resulting *delay in treatment* of Provencio's

serious medical injuries constituted deliberate indifference in violation of the Eighth

Amendment.   However, there is no mention of the delay in relation to Provencio's injuries in

1    Plaintiffs' second cause of action.  At best it could be it could possibly be said to be implied in

2    Plaintiffs' factual allegation of the distance to the nearest general hospital.  However, even that is

3    insufficient as "mere delay of [medical treatment], without more, is insufficient to state a claim

4    of deliberate medical indifference." Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404,

5    407 (9th Cir. 1985); Draper v. Harris,245 Fed. Appx. 699, 701 (9th Cir. 2007); Wood v.

6    Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).  Plaintiffs would need to allege what

7    additional substantial harm resulted from a delay in treatment.  Wood at 1335; Shapley at 407.

8    For the foregoing reasons this court concludes that Plaintiffs' second cause of action fails to

9    plausibly state a claim upon which relief can be granted under the standards enunciated by the

10   Supreme Court in Iqbal.

11        However, as the Ninth Circuit prior to Twombly and Iqbal has liberally construed

12   pleadings in section 1983 claims involving issues akin to supervisory liability, even if Plaintiffs

13   had successfully alleged a Constitutional violation against Defendant, Defendant is still entitled

14   to qualified immunity because the violation was not "clearly established." cf. Galbraith v. County

15   of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002) ("In this circuit, a claim of municipal

16   liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is

17   based on nothing more than a bare allegation that the individual officers' conduct conformed to

18   official policy, custom, or practice.' " Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621,

19   624 (9th Cir.1988) (quoting Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir.1986)))

20        This court has not found any cases that specifically resolves whether a prisoner's right to

21   be free from cruel and unusual punishment is abridged when medivac services are not utilized in

22   treatment.  Likewise, Plaintiffs have not cited the court to any cases supporting their specific

23   position.  Although precedent is not necessary, even taken in the larger legal context a reasonably

24   diligent administrator would not have known his conduct violated a clearly established right.  In

25   support of his motion, Defendant cites the court to the Supreme Court's decision in Youngberg v.

26   Romeo, 547 U.S. 307, 317 (1982), which noted, in the context of an institutionalized mentally

27

28                                              12

retarded plaintiff's Fourteenth Amendment rights to "habilitation training", that although a duty
to provide services and care does exist for institutionalized persons, "even then a State
necessarily has considerable discretion in determining the nature and scope of its
responsibilities."  Defendant, highlighting Plaintiffs' lack of cited precedent, further contends
that a court's qualified immunity inquiry "must be undertaken in light of the specific context of
the case, not as a broad general proposition[.]" Saucier 533 U.S. at 201. From the weight of
circuit authority, it is clear that the State's responsibility to address the serious medical needs of
prisoners extends only to providing the minimally adequate medical care.  Maggert v. Hanks, 131
F.3d 670, 671 (7th Cir. 1997); Harris v. Thingpen, 941 F.2d 1495, 1504 (11th Cir. 1991); see
U.S. v. Derbes, 369 F.3d 579, 583 (1st Cir. 2004) (while it is constitutionally obligated to
provide medical services to inmates, these services need only be on 'a level reasonably
commensurate with modern medical science and of a quality acceptable within prudent
professional standards.') (citations omitted); Wood 900 F.2d at 1334 ("Although [Plaintiff's]
treatment was not as prompt or efficient as a free citizen might hope to receive, [Plaintiff] was
given medical care at the prison that addressed his needs") (citations omitted).  The court again
finds no case on point addressing whether, as a matter of law, the minimum standard of care
requires the use of medivac services in lieu of emergency medical ambulances.  The court
concludes that, although the law requires access to minimally adequate medical care, given that
there is no precedent specifically on point the contour of the law does not "clearly establish" a
prisoners right to medivac services.  Because the law was not "clearly established" Defendant
could not reasonably be expected to know that he was violating Provencio's alleged Eighth
Amendment guarantee to receive medivac services.  Thus Defendant is entitled to qualified
immunity on Plaintiffs second cause of action.

B. Plaintiff's Third Cause of Action

Plaintiffs allege that Defendant "well-knew that inmates regularly suffered medical
injuries and conditions which required the immediate attention of a licensed medical doctor" and

1    that Defendant "failed to staff the medical facilities at Wasco State Prison with any full-time

2    licensed medical doctor."  The complaint alleges that, instead, Defendant contracted with Dr.

3    Ramos, a physician who resided and had his offices in Bakersfield, California, approximately 45

4    minutes away, to be on-call for emergencies at Wasco State Prison.  Plaintiffs assert that these

5    policies and conditions were a "direct and legal" cause of Provencio's injuries and death and

6    constituted a deliberate indifference to Provencio's serious medical needs, violating Provencio's

7    Eighth Amendment rights.  The third cause of action incorporates the previous allegations that

8    Defendant acted under the color of state law.  Defendant contends that Plaintiffs' third cause of

9    action must fail because Defendant is entitled to qualified immunity.

10       Turning to the two factors for qualified immunity identified in Saucier the court on this

11    issue will first inquire into whether the right was "clearly established."  For the following reasons

12    the court finds the Defendant has not met his burden to show the contours of the law were not

13    "clearly established" such that a reasonable official would not have known he was violating

14    federally protected right.  The Defendant, in support of dismissing the third cause of action,

15    presents the same arguments he put forth for dismissing the second cause of action.  In brief,

16    Defendant asserts that the inquiry into qualified immunity cannot be based on a general principle,

17    Saucier 533 U.S. at 201, and moreover while the State must provide medical care, the State has

18    discretion in determining the nature and scope of its responsibilities, Youngberg 457 U.S. at 317

19    (the court again notes Youngberg was in inquiry into right the right to "habilitation training"

20    under the Fourteenth Amendment).

21       It has long been the established law of this circuit that the Eighth Amendment grants

22    prisoners a right to have "reasonably speedy access" to emergency medical services:

23         Access to the medical staff has no meaning if the medical staff is not
     competent to deal with the prisoners' problems . . . . [the medical staff] must be

24      able to treat medical problems or to refer prisoners to others who can. Such
     referrals may be to other physicians within the prison, or to physicians or facilities

25      outside the prison if there is reasonably speedy access to these other physicians or
     facilities. In keeping with these requirements, the prison must provide an adequate

26      system for responding to emergencies. If outside facilities are too remote or too
     inaccessible to handle emergencies promptly and adequately, then the prison must

27

28                14

provide adequate facilities and staff to handle emergencies within the prison.
Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir.1982); see also Madrid v. Gomez, 889 F. Supp.
1146, 1256-58 (N.D. Cal. 1995) (citing Hoptowit).  Other circuits have arrived at similar
standards requiring minimally adequate medical care.  Ramos v. Lamm,639 F.2d 559, 574 (10th
Cir. 1980) ("We are convinced that this duty necessarily requires that the State make available to
inmates a level of medical care which is reasonably designed to meet the routine and emergency
health care needs of inmates.") (internal quotations and citations omitted); see also Maggert, 131
F.3d at 671; Harris, 941 F.2d at 1504; Derbes, 369 F.3d at 583.  In Hoptowit the Ninth Circuit
Court of Appeals affirmed the district courts finding that the medical care at Washington State
Penitentiary violated the Eighth Amendment, but reversed the district courts remedy as
overbroad.  Hoptowit at 1253.  The district court had found that the prison was staffed by only
"mid-level" practitioners, such as nurses and physician assistants, and concluded at minimum
two full-time physicians were needed.  Id. at 1252-53.  The Ninth Circuit held the district court
failed to grant proper deference to the State's approach to providing medical care. Id. at 1253-54.
The State contended it sought to provide only an infirmary, rather than a hospital and referred
inmates out to community medical treatment centers.  Id.  In accordance with the deference due
to the State, the Ninth Circuit remanded for findings of fact concerning adequate access to
community medical treatment.  Id.

Under similar circumstances, the district court in Balla v. Idaho State Bd. of Corrections,
595 F.Supp. 1558, 1583 (D.C. Idaho 1984), ordered the State to make available 24 hour
emergency medical services and contract or hire the equivalent of at least one full-time physician.
In Balla, the district court had found that the State had evinced deliberate indifference to the
serious medical needs of inmates at the Idaho State Correctional Institution by not providing,
among other things, a full-time doctor or emergency medical care approximately one-third of the
time.  Id. at 1575-76.

Hoptowit and Balla clearly illustrate that in this circuit inadequate access to emergency

15

1   medical care does violate the Eighth Amendment.  The question remains, however, whether the

2   Constitutional violation occurred.  The court in <u>Hoptowit</u> discussed how a prison could provide a

3   system of adequate medical care through referrals to the community.  The system and policies in

4   place at Wasco State Prison therefore could be Constitutional adequate.  Whether the specific

5   policies and conditions, enacted by Defendant, at Wasco State Prison are inadequate are

6   questions of fact which are not currently before the court.  Therefore, the court denies

7   Defendant's motion to dismiss Plaintiffs' third cause of action, but grants Defendant leave to

8   raise the defense of qualified immunity at a later point in the litigation.

9   C. <u>Plaintiffs' "New Theories" of Liability under Third Cause of Action</u>

10          Plaintiffs, in their opposition to Defendant's motion to dismiss, set forth two new theories

11   of liability, which Plaintiffs explicitly admit are based upon information they acquired after filing

12   their third amended complaint.  Plaintiffs, however, contend that the theories are present in the

13   third amended complaint.   Plaintiffs first new theory of liability alleges that Defendant had an

14   obligation to train WSP medical staff to recognize "the nature and types of injuries that may

15   result" from the use of "less than lethal weapons" such as the "'risk of potentially life threatening

16   sequella' following the impact of a high velocity projectile to the head."  Opposition to Mot. to

17   Dismiss at 7.  As the court understands it, Plaintiffs second new theory of liability alleges that

18   Defendant enacted a policy of requiring a "medical doctor's consent" before transporting an

19   inmate outside WSP in violation of California Code of Regulations Title 15, section 3350.2 and

20   Provencio's Eighth Amendment rights.[4]

21          Defendant contends Plaintiffs' new theories of liability are not contained in the third

22

23          _____

24          [4] Plaintiffs' requests for judicial notice of exhibits 1, 2, and 3, filed as document # 134-2,
      are denied because a deposition, an expert medical consultant report, and a correspondence
      between parties are not judicially noticeable under Federal Rule of Evidence 201(b).  Rule 201(b)
25    requires judicially noticeable facts to be either generally known in the territorial jurisdiction of
      the trial court or "capable of accurate and ready determination by resort to sources whose
26    accuracy cannot reasonably be questioned."  Plaintiffs' request for judicial notice of exhibit 1, a
      California Department of Corrections and Rehabilitation regulatory code, filed as document
27    #134-3, is granted because it is a type of document that is judicially noticeable.

28                                                    16

amended complaint and that Plaintiffs are improperly trying to use California's doe pleading

procedure to bring an entirely new theory of liability under the third cause of action.  Defendant,

while reaffirming his contention that Plaintiffs' claims against Defendant are time-barred, argues

that bringing a new theory of liability not explicitly stated in a complaint is procedurally

improper.  Defendant argues that failure to provide "adequate personnel" is not the same as

failing to train personnel.  Moreover, Defendant argues that when Plaintiffs allege failures to

train, they have done so explicitly.  The court will first evaluate whether each of these new

theories is contained in the third amended complaint.

      Plaintiffs' first "new theory" of liability has been set forth above.  The essence of

Plaintiffs' argument is that their new theory is present in the third amended complaint because

untrained personnel are not "adequate" personnel.  Specifically, whether or not this new theory is

present in the complaint turns on what is encompassed by the phrase "failed to provide adequate

support personal."  Plaintiffs' contend that their new theory–that Defendant failed to train

medical personal to identify and treat injuries resulting from the use of less than lethal weapons–

is implicitly incorporated in "adequate personnel" because if the medical staff were not trained,

the medical staff provided was not adequate.  As the Defendant has noted, when Plaintiffs

believed Defendant had failed to train personnel, Plaintiffs did so explicitly.  In addition, the

specific context of the allegations in the third amended complaint that Plaintiffs are attempting to

advance this new theory under relate to staffing the appropriate number and time coverage of

medical staff, not the training of said medical staff.  Providing adequate personnel is not the same

type of allegation as failing to train said personnel.

      Given the attenuated connection between Plaintiffs' new theory and the allegations in the

complaint, Plaintiffs' rather equivocal interpretation of the phrase "adequate personnel," and the

fact that Plaintiffs explicitly allege failures to train elsewhere in their complaint, the court finds

that Plaintiffs' first "new theory" is not sufficiently contained in the third amended complaint to

meet the minimal standards of Federal Rule of Civil Procedure 8(a).  Although Federal Rule of

1   Civil Procedure 8 does not require a claimant to set out in detail the facts upon which he bases

2   his claim, rule 8 does require a short and plain statement that will give the defendant fair notice

3   of what the plaintiff's claim is and the grounds upon which it rests.  Lee v. City of Los Angeles,

4   250 F.3d 668, 679 (9th Cir. 2001)  (citing Leatherman v. Tarrant County Narcotics Intelligence

5   and Coordination Unit, 507 U.S. 163, 168 (1993) and Conley v. Gibson, 355 U.S. 41, 47 (1957)

6   overruled on other grounds in Twombly 550 U.S. 544 (2007)).  Raising a completely new theory

7   of liability, with only attenuated connection to the complaint, in a brief in opposition to a motion

8   to dismiss does not grant Defendant fair notice of Plaintiffs' claim or the grounds upon which it

9   rests.  If Plaintiffs wish to further pursue this first new theory of liability they must request leave

10  to file a fourth amended complaint.[5]

11         The grounds underlying Plaintiffs' second new theory of liability are presented piecemeal

12  throughout Plaintiffs' brief in opposition to Defendant's motion to dismiss.  Plaintiffs second

13  new theory alleges Defendant had a policy of discouraging on duty medical staff from

14  transferring inmate to outside facilities without first consulting a licensed medical doctor.

15  Plaintiffs advance in a single sentence their argument stating how their new theory is present in

16  the third amended complaint.  Plaintiffs state that Defendant's "affirmative act of discouraging

17  his personnel from following California Cod of Regulations, Title 15, Article 8, Section 3350.2

18  again violates his duty to make sure that his emergency room is properly staffed with health care

19

20         [5] The court notes for the purposes of any future motions for leave to amend that "[w]hen

21  considering a motion for leave to amend, a district court must consider whether the proposed
    amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing

22  party, or is a dilatory tactic."  Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946,
    951 (9th Cir. 2006).  "These factors, however, are not of equal weight in that delay, by itself, is

23  insufficient to justify denial of leave to amend." DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
    186 (9th Cir.1986); Bowles v. Reade,198 F.3d 752, 757-58 (9th Cir. 1999); SAP

24  Aktiengesellschaft v. i2 Technologies, Inc.,250 F.R.D. 472, 474 (N.D. Cal. 2008).  "[I]n
    evaluating undue delay, we also inquire whether the moving party knew or should have known

25  the facts and theories raised by the amendment in the original pleading."  Eminence Capital, LLC
    v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  Of the factors, "prejudice to the opposing

26  party is the most important factor." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th
    Cir.1990); Eminence Capital at 1052 ("As this circuit and others have held, it is the consideration

27  of prejudice to the opposing party that carries the greatest weight").

28                                              18

practitioners who were trained to avoid Constitutional violations by sending critically injured

prisoners to facilities where they could receive the higher level of care required to treat them and

prevent their death." Defendant contends this theory is not contained in the third amended

complaint. The court finds that, even in the light most favorable to Plaintiffs, their assertion that

Defendant's alleged obligation to "provide adequate support personnel" encompasses a duty to

not create policies in violation of a state regulatory code or to not discourage medical staff from

following a state regulatory code is dubious. Moreover, this theory falls well below the notice

pleading requirements of Federal Rule of Civil Procedure 8(a). As stated previously, although

Federal Rule of Civil Procedure 8 does not require a claimant to set out in detail the facts upon

which he bases his claim, rule 8 does require a short and plain statement that will give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Lee 250

F.3d at 679. Here, as with Plaintiffs' first new theory, Plaintiffs have not properly complied with

the notice pleading requirements of Federal Rule of Civil Procedure 8(a). Plaintiffs second new

theory, on its face, appears to allege Defendant policies evinced deliberate indifference because

they were in violation of a state regulatory code that is never cited or even mentioned in the third

amended complaint. Raising what is essentially a new cause of action in an opposition brief to a

motion to dismiss is improper and does not provide Defendant with fair notice of Plaintiffs'

claim or the grounds upon which Plaintiffs' claim rests. If Plaintiffs wish to further pursue this

first new theory of liability they must file a motion for leave to file a fourth amended complaint.[6]

D. Plaintiffs' Fifth and Sixth Causes of Action

　　　　Defendant has moved this court to dismiss with prejudice Plaintiffs' fifth and sixth causes

of actions as either time-barred or for failure to state a claim upon which relief can be granted.

The fifth cause of action is brought by Marie Lucero as guardian ad litem for plaintiff Daniel

Provencio, Jr. alleging Defendant violated Plaintiff's due process rights under the Fourteenth

Amendment. The sixth cause of action is brought by plaintiff Nancy Mendoza and plaintiff

---

[6] See Footnote 5.

Johnny Gallegos Provencio alleging Defendant violated Plaintiffs' due process rights under the

Fourteenth Amendment.  Defendant offers only a footnote in support of his motion to dismiss.

Defendant states:

> Plaintiffs' fifth and sixth claims are derivative of the first three claims, and essentially incorporate the factual allegations and theories of liability. The fifth claim is brought by decedent Daniel Provencio's ("decedent") son, Daniel Provencio, Jr., for wrongful death under [sic] either the Fourteenth Amendment, and the sixth claim is brought by decedent's natural parents, also for wrongful death under [sic] either the Fourteenth Amendment. The first four claims are brought by the estate of decedent Daniel Provencio (hereinafter "decedent"), acting through "Daniel Provencio, Jr. as successor in interest to Daniel Provencio, deceased" (hereinafter "the estate").

Notice of Mot. To Dismiss at 6.

Defendant is correct that Plaintiffs' claims essentially incorporate the same factual

allegations as Plaintiffs' other claims.  However, Defendant is incorrect that Plaintiffs'

claims are "derivative."  Plaintiffs may individually assert a Fourteenth Amendment

claim based on the deprivation of their liberty interest arising out of the familial relations

with decedent, Provencio.  See Guess v. Byrd, 137 F.3d 1126, 1134 (9th Cir. 1998).  The

standard for such a violation is based on substantive due process.  See Moreland v. Las

Vegas Metropolitan Police Dept., 159 F.3d 365, 371 (9th Cir. 1998).  To prevail on a

Fourteenth Amendment claim arising out of the loss of a familial relationship, a plaintiff

must show that the Defendant's conduct shocks the conscience.  Id. at 372.  What state of

mind shocks the conscience depends on the circumstances of a particular case.  Id.  As

Plaintiffs' fifth and sixth causes of action are not time-barred by California's "doe"

pleading procedure and Defendant has not properly briefed the standards applicable to

Plaintiffs' Fourteenth Amendment claims, the court finds, viewing the complaint in the

light most favorable to the Plaintiffs, the Defendant has not met his burden.  The court

therefore denies Defendant's motion to dismiss Plaintiffs' fifth and sixth causes of action

against Defendant.

**CONCLUSION AND ORDER**

Defendant's motion to dismiss is hereby, GRANTED in part, and DENIED in part. The court ORDERS that:

1. Defendant's motion to dismiss Plaintiffs' second cause of action is GRANTED, in relation to Defendant, Dr. Michael Songer, only.

2. Defendant's motion to dismiss Plaintiffs' third cause of action is DENIED.

3. Defendant's motion to dismiss plaintiff, Daniel Provencio Jr.'s fifth cause of action is DENIED.

4. Defendant's motion to dismiss plaintiffs, Nancy Mendoza and Johnny Gallegos Provencio's, sixth cause of action is DENIED.

_____5. Plaintiffs are given leave to file a motion to file an amended complaint within twenty days of this order's date of service.

IT IS SO ORDERED.

**Dated:   July 29, 2009   **             _____/s/ Anthony W. Ishii_____
                                          CHIEF UNITED STATES DISTRICT JUDGE

21